Elsie D. Troup et al., Appellees, v. Paul W. Horbach et al., Appellants.

Filed February 17, 1898.   No. 9375.

1. **Corporations: Sales of Stock: Payment in Property: Liability of Purchasers.** Owners of property have a right, in disposing of it, to place such valuation thereon as they see fit; and if, with such property at an overvaluation, they pay for capital stock issued to

them by a corporation, the excess above the real value of the property cannot subsequently be treated by creditors of the corporation as never having been paid, in the absence of fraud, misrepresentation, suppression of the truth, and the violation of the obligations of law or morality, express or implied.

2. ———: ———: ———: ———. A purchaser of the capital stock of a corporation from one who has fully paid for the same in property cannot be held liable to creditors of such corporation solely on the theory that the property recognized as a proper medium of payment had been accepted as payment by the corporation at too high a valuation.

3. Attorney: VERIFICATION OF PLEADING: ESTOPPEL. Where a defendant, an attorney at law, as such, signed the petition praying judgment against himself, and verified such petition, in which it was averred that he owed the plaintiff a certain sum, he cannot in the face of these facts, on appeal, be relieved in the supreme court.

APPEAL from the district court of Gage county. Heard below before LETTON, J. *Reversed.*

The facts are stated by the commissioner.

*John D. Howe,* for appellants:

Purchase of stock and payment in property at more than its real value will not enable a creditor giving credit to the corporation with full knowledge of the facts to charge the stockholder with the difference between the real value of the property and the value at which it was taken. (3 Thompson, Corporations sec. 2932; *Bank of Fort Madison v. Alden,* 129 U. S. 372; *Thompson v. Bemis Paper Co.,* 127 Mass. 595; *Hospes v. Northwestern Mfg. & Car Co.,* 50 N. W. Rep. [Minn.] 1117; *Adamant Mfg. Co. v. Wallace,* 48 Pac. Rep. [Wash.] 415; *First Nat. Bank v. Gustin Minerva Consolidated Mining Co.,* 44 N. W. Rep. [Minn.] 198; *Coit v. Gold Amalgamating Co.,* 119 U. S. 343; *Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co.,* 75 Fed. Rep. 554.)

John A. Horbach was not a stockholder, as each party must consent—the one to become a member, and the other that he should become a member of the corpora-

tion. (*Essex Turnpike Corporation v. Collins*, 8 Mass. 299; Angell & Ames, Corporations sec. 527, and cases cited.)

Other references in an argument on the non-liability of appellants: *Gilke v. Dawson Town & Gas Co.*, 46 Neb. 333; *Wood v. Dummer*, 3 Mason [U. S.] 308; *Gorder v. Plattsmouth Canning Co.*, 36 Neb. 549; *Jackson v. Traer*, 64 Ia. 469; *New Albany v. Burke*, 11 Wall. [U. S.] 96; *Stacey v. Little Rock & Ft. S. R. Co.*, 5 Dil. [U. S. C. C.] 348; *Webster v. Upton*, 91 U. S. 65; *Upton v. Tribilcock*, 91 U. S. 45; *Phelan v. Hazard*, 5 Dil. [U. S.] 45; *Hart v. Lauman*, 29 Barb. [N. Y.] 410; *Moore v. Hudson River R. Co.*, 12 Barb. [N. Y.] 156; *Porter v. Buckfield B. R. Co.*, 32 Me. 539; *Memphis & L. R. Co. v. Dow*, 120 U. S. 287; *Peoria & S. R. Co. v. Thompson*, 103 Ill. 187; *Shaw v. Robinson*, 50 Neb. 403; *Morgan v. Brower*, 77 Ga. 627; *Flinn v. Bagley*, 7 Fed. Rep. 785; *Hatch v. Dana*, 101 U. S. 205; *Graham v. Railroad Co.*, 102 U. S. 148; *Gilman v. Gross*, 72 N. W. Rep. [Wis.] 885; *Coleman v. White*, 14 Wis. 762; *Hadley v. Russell*, 40 N. H. 109; *Farmers Loan & Trust Co. v. Funk*, 49 Neb. 353; *Adler v. Milwaukee Patent Brick Mfg. Co.*, 13 Wis. 57; *Griffith v. Mangam*, 73 N. Y. 611; *Morgan v. New York & A. R. Co.*, 10 Paige Ch. [N. Y.] 290; *Mann v. Pentz*, 3 N. Y. 415; *Pollard v. Bailey*, 20 Wall. [U. S.] 520; *Terry v. Little*, 101 U. S. 216; *Patterson v. Lynde*, 106 U. S. 519; *Niver v. Crane*, 98 N. Y. 40.

*Charles Offutt*, also for appellants:

The contracts between the Horbachs and the transit and power company were not frauds upon the creditors of the corporation, not a single creditor was injured by either of the contracts, John A. Horbach was never a shareholder either in fact or beneficially, and appellants are not liable. (*Fogg v. Blair*, 139 U. S. 118; *Christensen v. Eno*, 106 N. Y. 97; *Van Ostrand v. Reed*, 1 Wend. [N. Y.] 424.)

The shares of stock issued to Paul W. Horbach were not subscribed by either of the Horbachs or by Lantry. These shares had all been previously issued by the com-

pany to the original or other shareholders, and were by the holders voluntarily surrendered to the company to enable it to execute its agreement with Horbach. Hence the shares issued to Horbach were assets of the company which it had the right to sell for what it could get, and the purchaser or owner of such shares incurred none of the liabilities of a subscriber to shares, nor any liability to pay the difference between the par value of the shares and what had been previously paid thereon. (1 Cook, Stock and Stockholders [3d ed.] sec. 29; *Ramwell's Case*, 50 L. J. Ch. [Eng.] 827; *Otter v. Brevoort*, 50 Barb. [N. Y.] 247; *People v. Allany & S. R. Co.*, 55 Barb. [N. Y.] 371; *Lake Superior Iron Co. v. Drexel*, 90 N. Y. 87; *Morrow v. Iron & Steel Co.*, 87 Tenn. 262; *Handley v. Stutz*, 139 U. S. 417; *Clark v. Bever*, 139 U. S. 96; *Van Cott v. Van Brunt*, 82 N. Y. 535.)

A transferee of shares is not liable for unpaid subscriptions on his shares unless he has agreed with the corporation to pay them. If he has not promised he is not liable. (*Seymour v. Sturgess*, 26 N. Y. 143; 1 Cook, Stock and Stockholders [3d ed.] sec. 46; *Foreman v. Bigelow*, 9 Fed. Cases 441; *Currie's Case*, 3 De Gex, J. & S. [Eng.] 367; *De Ruvigne's Case*, 5 L. R. Ch. D. [Eng.] 306; *Anderson's Case*, 7 L. R. Ch. D. [Eng.] 94; *Christensen v. Eno*, 106 N. Y. 97.)

Existing creditors were not injured by the contracts with the Horbachs, and other creditors had knowledge thereof. Appellees cannot, therefore, complain of these contracts. (*First Nat. Bank of Deadwood v. Gustin Minerva Consolidated Mining Co.*, 42 Minn. 327; *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn. 174; *Handley v. Stutz*, 139 U. S. 417; 1 Cook, Stock and Stockholders [2d ed.] sec. 46.)

*E. R. Duffie* and *A. H. Babcock*, also for appellants.

*J. E. Cobbey* and *G. M. Johnston, contra:*

Lantry having such notice as would put him on in-

quiry, the burden of showing himself an innocent purchaser rested on him. (*Wishard v. Hansen*, 68 N. W. Rep. [Ia.] 691; *Oswald v. Minneapolis Times Co.*, 68 N. W. Rep. [Minn.] 15.)

The decree was correctly entered. (*Commercial Nat. Bank v. Gibson*, 37 Neb. 750.)

Appellants are liable. (*Gilkie v. Dawson Town & Gas Co.*, 46 Neb. 333; *Elyton Land Co. v. Birmingham Warehouse Elevator Co.*, 9 So. Rep. [Ala.] 129; *Wishard v. Hansen*, 68 N. W. Rep. [Ia.] 691; *Globe Publishing Co. v. State Bank*, 41 Neb. 175; *Gogebic Investment Co. v. Iron Chief Mining Co.*, 47 N. W. Rep. [Wis.] 726; *Sanger v. Upton*, 91 U. S. 56; *Farmers Loan & Trust Co. v. Funk*, 49 Neb. 353; *State v. German Savings Bank*, 50 Neb. 734; *Boulton Carbon Co. v. Mills*, 43 N. W. Rep. [Ia.] 290; *Welles v. Larrabee*, 36 Fed. Rep. 866; *Preston v. Cincinnati, C. & H. V. R. Co.*, 36 Fed. Rep. 54; *Shields v. Casey*, 25 Atl. Rep. [Pa.] 619; *Davis v. Stevens*, 17 Blatchf. [U. S.] 259; *Case v. Small*, 10 Fed. Rep. 722; *National Bank v. Case*, 99 U. S. 628; *McKim v. Glenn*, 8 Atl. Rep. [Md.] 130; *Baines v. Babcock*, 27 Pac. Rep. [Cal.] 674.)

A transferee of stock is liable for the balance remaining unpaid upon stock which he purchases or receives, knowing it to be unpaid, though it be issued as fully paid and non-assessable. (*White v. Greene*, 70 N. W. Rep. [Ia.] 182; *Henderson v. Turngren*, 35 Pac. Rep. [Utah] 495; *Peninsular Savings Bank v. Black Flag Stove Polish Co.*, 63 N. W. Rep. [Mich.] 514; *Hastings Malting Co. v. Iron Range Brewing Co.*, 67 N. W. Rep. [Minn.] 652; *Scoville v. Thayer*, 105 U. S. 225; *Calumet Paper Co. v. Stotts Investment Co.*, 64 N. W. Rep. [Ia.] 782; *Carter v. Union Printing Co.*, 16 S. W. Rep. [Ark.] 579; *Peck v. Elliott*, 79 Fed. Rep. 10; *Addison v. Pacific Coast Milling Co.*, 79 Fed. Rep. 459.)

All creditors becoming such after the corporation authorized the issue of stock may enforce the liability. (*Handley v. Stutz*, 139 U. S. 417; *Webster v. Upton*, 91 U. S. 65; *Pullman v. Upton*, 96 U. S. 331.)

*A. C. Troup, Griggs, Rinaker & Bibb,* and *E. H. Hinshaw,* also for appellees.

RYAN, C.

This appeal was advanced for hearing upon an agree-ment of parties in compliance with rule 2. (52 Neb. ix.) The action was brought in the district court of Gage county, wherein there were judgments against the several defendants conformably with the prayer of the peti-tion. Plaintiffs alleged that they were creditors of the Beatrice Rapid Transit & Power Company in various sums which were described in separate paragraphs, and in many instances were evidenced by judgments against that company. They further alleged that under a de-cree of the United States circuit court for the eighth circuit, district of Nebraska, all the property of the Beatrice Rapid Transit Company had been sold and that it was without any property for the payment of its afore-said indebtedness. The prayer of the petition was as follows: "Wherefore plaintiffs pray that each of said defendants may be held liable for the several amounts hereinbefore claimed due from them upon the stock of the Beatrice Rapid Transit & Power Company, as herein-before alleged, and that said defendants, and each of them, may be required to pay to these several plaintiffs the amounts of their several claims; that the court may adjudge the amount due from each may be held and de-creed to be due to these several plaintiffs the full amount of their respective claims, and that under the order of this court the amounts so found due from said several de-fendants may be collected of them, severally, the full amount found to be due to these plaintiffs, together with the costs of this proceeding; that the said John A. Hor-bach and Paul W. Horbach may be held jointly and sev-erally liable for the amount of stock issued to the said Paul W. Horbach, as hereinbefore alleged, and that the several plaintiffs may have such other further and dif-

ferent relief as in equity they may be entitled to, and for their costs." From this prayer it is clear that the defendants were proceeded against as being liable as holders of shares of the Beatrice Rapid Transit & Power Company capital stock on the assumption that these shares had not been paid for. Issues were joined by answers, except in the instances wherein there were defaults.

To illustrate the general theory on which it was sought to hold liable certain of the stockholders it will be sufficient to quote one sample paragraph of the petition. We shall also quote another paragraph which supplements the allegations of that already referred to. The two paragraphs above indicated are in this language:

"The defendant Beatrice Rapid Transit & Power Company issued to the defendant George R. Scott 115 shares of their capital stock of the par value of $11,500; that the only consideration paid by said Scott for the issuing of said stock was services rendered to the said rapid transit company, and real estate transferred by said Scott and wife to said rapid transit company, and that the total amount of said real estate and services did not exceed the amount of $7,000; that there is still due from said Scott on his said stock the sum of $4,500.

"The defendant Beatrice Rapid Transit & Power Company issued to the defendants William Ebright, E. S. Cushman, full Christian name unknown, L. F. Easterday, full name unknown, William Bozarth, Jacob Klein, William H. Tichnor, Jonathan S. Grable, John Ellis one or more shares each of its capital stock of the par value of $100 per share; that the only consideration paid therefor was the conveyance of certain real estate conveyed by each of them severally to the said rapid transit company, but these plaintiffs have not the records of said company and cannot give the exact amount of stock issued to each of them severally, nor the amounts in fact paid thereon, nor the value of the property given in pay-

55

ment therefor, but plaintiffs allege that they did not in
fact pay the full par value of their said stock and that
there is still due from each of said defendants a small
amount on each of their said shares of stock so issued to
them which plaintiffs ask they may be required, upon a
hearing and accounting in this court, to pay to these
plaintiffs. And plaintiffs allege that said defendants
Schell, Brumback, Spencer, Beatrice Real Estate & Trust
Company, Johnston, Davis, Blakely, Blakely, Scott, Ryan,
Ebright, Cushman, Easterday, Bozarth, Klein, Tichnor,
Grable, and Ellis, and each of them, had full knowledge
that the respective shares of stock issued to them respect-
ively, as alleged, had not been paid for in full and that
the said property and services had been greatly overval-
ued, and that the payment for such stock by said property
or services at such overvaluation was a fraud on the cred-
itors of said rapid transit company."

In the petition there was no charge of fraud against
the parties first named except the above language, and
this, it is quite clear, was a mere conclusion of the
pleader deduced from the facts alleged. Whether or not
this deduction was correct is one of the questions which,
later, we shall consider. With reference to the liability
of Scott the court found in its decree as follows:

"The court further finds that 200 shares of the capital
stock of the rapid transit and power company, being cer-
tificates 46 to 50 inclusive, were issued to George R. and
W. W. Scott in consideration of the conveyance to said
company by said George R. Scott of certain real estate;
that said shares were of the value of $20,000, and that
the property in exchange for which they were issued was
of the fair cash value of $6,000; that said property was
grossly overvalued."

In the decree there was a paragraph in this language:

"The court further finds that at the time that the afore-
said shares of stock were issued to the said L. E. Spencer,
N. N. Brumback, G. M. Johnston, S. K. Davis, C. L.
Schell, Jacob Klein, Nathan Blakely, Mrs. I. W. Funck,

J. S. Grable, John Ellis, H. C. Bozarth, William Tichnor, William Ebright, George R. Scott, Ira L. Ryan, Beatrice Real Estate & Trust Company, L. F. Easterday, Walter W. Scott, each and all of the persons had full knowledge that the property or services in consideration for which the said shares of stock were issued by the said corporation to said several persons respectively, was greatly disproportionate in value to the face of the shares of stock exchanged therefor, and that the officer of said corporation issuing said stock, and the parties receiving the same, both well knew that said great disparity in value existed, and each of the said issues of stock to each of the several persons aforesaid was made with the full understanding and knowledge that the property exchanged for said stock was worth for the most part only about one-half of the face value of said stock and was in fact of the value hereinbefore found by the court."

If we understand correctly the theory upon which the court proceeded in entering judgment pursuant to the above findings, it was that parties who purchased stock and in payment therefor transferred to the company real property, were only entitled to receive credit for the actual value of such real property at the time it was transferred. There was no evidence that there was any misrepresentation as to the value of this property upon which misrepresentation the company had acted to its injury, indeed, in most instances misrepresentation of value could scarcely have imposed upon the officers of the company, for the property was within the corporate limits of the city of Beatrice. It was not alleged that any of these purchasers of capital stock owed any duty to the company, or that they were in any way connected with it at the time that they exchanged real property for stock. We therefore assume that the theory was that at any subsequent time, within the limit fixed by the statute of limitations, it was the right of the company, and in case of its insolvency the right of its creditors, to institute an action against stockholders for the

difference between the par value of the stock and the real value of property which the company had received as full payment for such stock irrespective of the above considerations. In this view we cannot concur. A party, without fraud or misrepresentation, has the right to fix whatever value he chooses upon his property, and a corporation no more than a person can be relieved against its own want of judgment in buying such property at the price named. In making this statement we do not take into consideration fraud, breach of warranty, misrepresentation, suppression of the truth, or other proper grounds for relief which might be proper in some cases to consider. These elements are purposely omitted, for they were neither pleaded, proved, nor found to exist. We are therefore of the opinion that the judgments of the district court rendered in this case against Charles L. Schell, N. N. Brumback, L. E. Spencer, Beatrice Real Estate & Trust Company, S. K. Davis, William Ebright, E. S. Cushman, L. F. Easterday, William Bozarth, D. W. Morrow, Nathan Blakely, and George R. Scott must be reversed. In the same class with the defendants just named there were Jacob Klein, Alexander Moore, and Ira Ryan, but the judgments against them cannot be reviewed, for the reason that they were rendered upon the default of said parties. ·

The judgment against G. M. Johnston must be affirmed to the extent of $1,300, for reasons which shall now be stated. In the petition it was charged that the Beatrice Rapid Transit & Power Company had issued to Johnston 153 shares of its capital stock of the value of $15,300; that the only consideration paid for this stock was $14,000 in property and services; and it was alleged: "That said Johnston still owes on said stock the sum of $1,300." This petition was signed by Mr. Johnston as an attorney for plaintiffs and was verified by him. The affirmance of this portion of the judgment, to the extent above indicated, is rendered necessary by the attitude thus assumed by Mr. Johnston and by no other consideration.

A judgment in form seems to have been entered against Elsie D. Troup and J. C. Bozarth, but as they were not named in the petition as defendants, and as no relief was asked as against them, we assume that in reality there was no judgment against either of them.

The other defendants against whom judgments were rendered were John A. Horbach, Paul W. Horbach, and Victor G. Lantry, against whom the petition contained the following averments: "The said Beatrice Rapid Transit & Power Company issued to the defendant Paul W. Horbach 1,250 shares of said capital stock of the par value of $125,000; that said Paul W. Horbach paid no consideration whatever for said stock or any of it, but that the same was issued to him by the request of John A. Horbach, who had acquired said stock by virtue of an agreement with the Beatrice Rapid Transit & Power Company by which he was to loan the said Beatrice Rapid Transit & Power Company the sum of $20,000; that said $125,000 of stock was in the nature of a bonus to John A. Horbach and as an inducement to him to make said loan and was without consideration, and was issued to his son, Paul W. Horbach, for the illegal and collusive purpose of placing it beyond the attack of creditors of the Beatrice Rapid Transit & Power Company, and to relieve him, said John A. Horbach, from any liability on account of said alleged purchase of said stock; that afterwards said $125,000 of capital stock was by said Paul W. Horbach transferred to the said defendant Victor G. Lantry, who surrendered the original certificate issued to Paul W. Horbach and had the stock reissued to him. Plaintiffs believe and allege that the said transfer from said Paul W. Horbach to said Victor G. Lantry was wholly without consideration, but whether with or without consideration, said Victor G. Lantry never paid to said Beatrice Rapid Transit & Power Company the value of said stock or any part thereof, and said Victor G. Lantry, Paul W. Horbach, and John A. Horbach each knew, and had full notice of

the fact, that said stock had been issued wholly without consideration, and that the said par value of said stock or no part thereof had been paid by them or either of them, or by any one at any time, to the said Beatrice Rapid Transit & Power Company, or to any one else for them, and each of said last named defendants had full knowledge that the said Beatrice Rapid Transit & Power Company was largely indebted at the time said stock was issued and at the several reissues thereof, and each of said three last named defendants knew that the issue of said $125,000 of stock was a fraud upon creditors of said rapid transit company, and upon the individuals and the public dealing with and extending credit to said rapid transit company, and these plaintiffs in particular; that the defendant Victor G. Lantry afterwards conveyed to the defendant D. W. Morrow and the defendant Alexander Moore, each, one share of said stock of the par value of $100, and that neither of said shares had been paid for, and which fact said defendants Morrow and Moore well knew, and said defendants well knew that said shares of stock so conveyed to them was issued without consideration and without being paid for in whole or in part by any person; that said defendants Paul W. and John A. Horbach, V. G. Lantry each became and still are liable for the full par value of said stock and said Morrow and Moore are each liable for the par value of one share of the said stock." With respect to these three defendants the finding of the district court was as follows:

"The court further finds that on about the 8th day of September, 1892, the defendant the Beatrice Rapid Transit & Power Company borrowed from one John A. Horbach, of the city of Omaha, Nebraska, the sum of $20,000 for one year, with interest at the rate of 8 per cent per annum, for the purpose of extending the lines, and completing and improving the plant of said company, and for the purpose of securing the payment of said loan at maturity the said Beatrice Rapid Transit & Power Com-

pany delivered to John A. Horbach, as collateral se-
curity, certain mortgage bonds of said company; that as
an inducement to John A. Horbach for the making of
said loan, said Beatrice Rapid Transit & Power Company
through its directors agreed to procure and deliver to
said John A. Horbach, as a bonus or premium in addition
to the eight per cent interest which they agreed to pay
on said loan, and for the purpose of allowing the con-
trol of said corporation to be in the hands of said Hor-
bach, shares of stock representing one-half of the total
capital stock of said company, to-wit, 1,250 shares of the
par value of $125,000; that the agreement as to said
shares was made with John A. Horbach in the first place,
but that afterwards, at his instance and request, said
shares of stock were issued to his son, Paul W. Horbach,
of said city of Omaha; that at the time of making said
loans, and as a part of the same transaction, it was
agreed between John A. Horbach and Paul W. Horbach
and the defendant Beatrice Rapid Transit & Power Com-
pany, in consideration of the sum of $20,000, that the
said Paul W. Horbach should furnish the material and
build the extensions, for the making of which said $20,-
000 was borrowed, and that the provision with reference
to the 1,250 shares aforesaid should be embraced in the
contract made with Paul W. Horbach, which agreement
was carried out.

"The court finds that said contract and agreement by
which the said shares of stock were to be issued in the
name of Paul W. Horbach, was made in fact for the
benefit and protection of John A. Horbach, and for the
purpose of avoiding any liabilities which the said John
A. Horbach might incur by reason of the issuance of said
stock to him in his own name.

"The court finds that thereafter, to-wit, on the 16th
day of September, 1892, the said Beatrice Rapid Transit
& Power Company, in pursuance of the said agreement
with John A. and Paul W. Horbach, procured an issue
to said Paul W. Horbach of 1,250 shares in said corpora-

tion, which said shares of stock were issued by virtue of certificate No. 86, and were issued upon no other consideration than heretofore stated.

"The court finds that the said John A. Horbach and Paul W. Horbach, prior to the time of the issuance of said stock to Paul W. Horbach, had full knowledge and notice of the financial condition, assets, property, and indebtedness of said Beatrice Rapid Transit & Power Company as it stood at the time said contracts or agreements with them were made, and had full knowledge of the manner in which stock had been issued to the persons then holding the stock of the corporation; that the fact that said stock, or a large portion thereof, was issued in excess for property and services which were grossly overvalued, and that none of said stock had ever been fully paid for in money and money's worth, was well known to them.

"The court finds that defendant Victor G. Lantry, who became the owner of the 1,250 shares of stock assigned to him by Paul W. Horbach, had sufficient knowledge to put a reasonable, prudent man upon inquiry as to the assets of said corporation, its condition, and whether or not said stock had ever been paid for, and that he is not such an innocent purchaser of said stock as to entitle him to be relieved from liability thereon. The court therefore finds that he is liable to the same extent as John A. and Paul W. Horbach upon the said 1,250 shares of stock.

"The court finds that certificate No. 86, issued to Paul W. Horbach, was made up and composed of shares of stock issued to the persons, and certificates, the numbers of which are hereinafter set forth, and that there remained due and unpaid upon each of said several shares of stock the amounts set opposite the name of each party in the following table, together with the total amount due as shown in said table:

Troup v. Horbach.

| Name of Source of Shares. | No. of Certificates. | Bal. per Share Unpaid. | No. of Shares to Horbach | Total Amount Due. |
|---|---|---|---|---|
| N. N. Brumback ........... | 4–5–7–9–........... | $89 33 | 187½ | $16740 37 |
| L. E. Spencer.............. | 13–14–16–17........ | 89 33 | 200 | 17866 00 |
| G. M. Johnston ........... | 23 shares from No. 20; 21–22 2 from No. 26 | 60 00 | 215 | 12900 00 |
| Elsie D. Troup............. | 5 shares from No. 32.. | 50 00 | 5 | 250 00 |
| Jacob Klein................ | 29.................... | 62 50 | 5 | 312 50 |
| J. S. Grable............... | 36.................... | 57 50 | 5 | 287 50 |
| John Ellis................. | 37–60................. | 50 00 | 20 | 1000 00 |
| H. C Bozarth.............. | 40.................... | 33 33 | 3 | 99 99 |
| J. C. Bozarth ............. | 39.................... | 50 00 | 7½ | 375 00 |
| William Tichnor........... | 41.................... | 50 00 | 7½ | 375 00 |
| William Ebright........... | 38.................... | 50 00 | 8 | 400 00 |
| F. L M. Easterday ........ | 57–59................. | 50 00 | 7 | 350 00 |
| Ira L. Ryan............... | 43–44–45............. | 47 55 | 30½ | 1450 00 |
| George R. Scott & Walter Scott ................... | 46 to 50 inc......... | 70 00 | 75 | 5250 00 |
| N. N. Brumback, assigned to N. T. Brumback......... | No. 67 (26¼ of this reissued to N N.Brumback)............... | 89 33 | 73¾ | 6588 08 |
| N. N. Brumback ......... | 73.................... | 33 33 | 10 | 333 30 |
| I. W. Funck.............. | 68.................... | 50 00 | 13 | 650 00 |
| G. M. Johnston........... | 75–83................. | 33 33 | 30 | 999 90 |
| L. E. Spencer, assigned to Mary B. Spencer......... | 70 (58¾ of this cert. reissued to L. E. Spencer)........... | 89 33 | 41¼ | 3684 86 |
| L. E Spencer.............. | 74–83................. | 33 33 | 30 | 999 90 |
| S K. Davis............... | 77.................... | 66 66 | 2½ | 166 65 |
| C. L. Schell.............. | 79.................... | 83 33 | 47½ | 3958 17 |
| Nathan Blakely .......... | 84.................... | 100 00 | 50 | 5000 00 |
| George R. Scott........... | 85.................... | 100 00 | 50 | 5000 00 |
| Beatrice Real Estate & Trust Co., being reissue from No. 6–15, part of Brumback & Spencer 1st issue ........ | No. 92............... | 89 33 | 50 | 4466 50 |
| Paul W. Horbach.......... | .................... | 100 00 | 76 | 7600 00 |
| | | | 1250 | $97112 72 |

"The court finds, as to defendants D. W. Morrow and Alexander Moore, that they are innocent purchasers without notice from the said Victor Lantry of the shares of stock held by them and that they are not liable for any amount whatsoever upon said shares of stock."

The above table shows who surrendered stock and in what amounts it was surrendered by individuals. Certificate No. 86 was simply an issue in place of stock thus surrendered. The transaction was but the regular and

proper method of transferring the stock held by these individuals. We can find no evidence that either of the Horbachs or Mr. Lantry had actual knowledge of the manner in which this stock was issued to the individuals named in the table above given. We think unsustained by the evidence the finding that Lantry, when he became the owner of the 1,250 shares of stock assigned to him, had sufficient knowledge to put a reasonable, prudent man upon inquiry as to the assets of said corporation, its condition, and whether or not the stock had been fully paid for. The certificates issued to individuals, and those issued in their stead, recited that the shares were fully paid up and there were no facts contradictory of these recitations within the knowledge of Lantry, so far as the evidence shows, except such knowledge as was possessed by the public at large, and that was merely that the corporation was not in a prosperous financial condition. We have already found, however, that the original holders of the stock were not liable under the issues joined and there was therefore no unpaid subscription which could follow the stock. There was therefore no grounds for holding John A. Horbach, Paul W. Horbach, or Victor Lantry liable as successors in the ownership of stock when their assignors had already paid for the same, or at least must be deemed to have done so, under the issues tried in this case.

The judgment of the district court against G. M. Johnston to the extent of $1,300 is affirmed; the judgments against the other defendants not rendered upon defaults are reversed and the cause is remanded for further proceedings not inconsistent with the views above expressed.

REVERSED AND REMANDED.