J. W. PENFIELD ET AL., APPELLEES, V. DAWSON TOWN & GAS COMPANY. ET AL., APPELLANTS.

FILED DECEMBER 22, 1898.  No. 8544.

Corporations: EXCHANGE OF PROPERTY FOR STOCK: LIABILITY OF STOCK-HOLDERS. In an action to hold liable to creditors of a corporation certain of its stockholders because, as found by the court, the property conveyed by such stockholders in payment for their stock was greatly overvalued, a judgment against the stockholders was improperly rendered in view of the further finding that the defendants acted in good faith and without any attempt to defraud said corporation or its creditors,—the evidence being sufficient to sustain both findings.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J. *Reversed.*

*John C. Cowin* and *Cowin & McHugh*, for appellants.

*E. G. Thomas, Cavanagh & Thomas*, and *Henry W. Pennock*, contra.

RYAN, C.

This equitable action was brought by certain judgment creditors of the Dawson Town & Gas Company, and by plaintiffs and certain interveners was prosecuted to judgment in the district court of Douglas county against certain stockholders in said corporation. In the petition—in which there were averments of the corporate character of the Dawson Town & Gas Company,

the ownership by defendants respectively of certain shares of its capital stock, and the rendition of judgments against said corporation—there were the following averments: "That said corporation is insolvent and has no property out of which plaintiff can make said judgment; that the authorized capitalized stock of said corporation was $300,000; that said stock was issued to each of the defendants Arthur B. Cooley and J. T. Hoile to the amount and of the par value of $120,000 each, and as payment therefor said defendants fraudulently turned in to said corporation certain real estate situated in the state of Iowa at a false and fictitious value of $205,000; that no payment was ever made on such stock, except said real estate; that said real estate was worth, at the time of said transaction, not to exceed $20,000; that the said defendants and the directors of said corporation knew the value of said real estate, and that said real estate was fraudulently received in payment of said stock; that said real estate was largely incumbered." The holders of stock other than Hoile and Cooley, it was in effect alleged, became such stockholders by assignments from Hoile and Cooley and were therefore liable ratably, as were also Hoile and Cooley, for the difference between the par value of the stock at any time held by them and the actual value of the real property which formed the consideration for the issue of the stock as fully paid up.

In the light of subsequent developments it is not difficult to approve the finding of the district court that the real property, in consideration of which the capital stock of the company was issued, was received by the Dawson Town & Gas Company at a great overvaluation. There was testimony by parties who owned farm lands in the vicinity of the town of Dawson, Iowa, that the lands turned in to the company in payment for its stock was, as farm lands, worth only from $30 to $50 per acre. These witnesses, however, expressly limited their estimates to the value of these lands for farming purposes,

On the other hand, the witnesses who testified as to the enhanced value of the property by reason of the shale, the coal, the fire-clay, and the natural gas found beneath its surface placed a much higher valuation upon it, two of them fixing the value of this property at from $400,000 to $500,000. It is true they were interested witnesses, for they were defendants, but the testimony serves to illustrate what considerations might have led them and their associates into honestly making an estimate of the value of the lands turned in, which now seems absurdly excessive. Their testimony was uncontradicted that there were at least four veins of coal, two of which could be profitably worked, on 300 acres of this land; that this coal was overlaid with a stratum, six to thirty feet thick, of shale suitable for the manufacture of paving bricks; and that beneath the coal was a stratum of fire-clay. It was testified that at Dawson alone was there to be found coal on the line of the Chicago, Milwaukee & St. Paul railroad between Omaha and Chicago. On the other tract turned in, which contained 320 acres, it was testified, without contradiction, that there were three wells which produced natural gas; that the company used this gas for burning bricks; and that its pressure was 120 pounds to the square inch. The town of Dawson, containing about 300 inhabitants, was located on one of these tracts, and it was expected that, with the success of the various manufacturing projects, a considerable portion of the surface could be sold at a high valuation for residence lots. The faith which these parties had in the realization of their hopes is evidenced by their investment in improvements of $40,000, of which $38,000 was in a brick plant and $2,000 was in piping for the gas wells. The valuation by these men was largely speculative, and in their ardor it is possible they may have deceived themselves. In connection with its finding of overvaluation the district court found: "That the defendants acted in good faith and without any attempt to

defraud said corporation or its creditors." In other words, the court, upon evidence which justified both conclusions, found that the property at excessive overvaluation was exchanged for stock by the promoters of the corporation, but that this was done in good faith and with no intent to defraud the corporation or its creditors. On the hearing of another case which grew out of these same transactions it was found by the district court that the property turned in for stock had been excessively overvalued, and, in addition, that the exchange was fraudulent in law, and on appeal to this court the judgment of the district court, based upon these findings against the stockholders, was accordingly affirmed. (*Gilkie & Anson Co. v. Dawson Town & Gas Co.*, 46 Neb. 333.) The ultimate inquiry in this case was whether or not the issuance of the stock was fraudulent. The overvaluation was a circumstance tending to establish fraud, and yet it was not of such controlling force that a finding that there was no fraud could not be sustained.

In *Gilkie & Anson Co. v. Dawson Town & Gas Co., supra*, it was said: "In this state there were no specific requirements or restrictions in relation to the manner of payment for the stock purchased, and no doubt the land, being such as it was within the province of the company to hold and appropriate for use in its business, could be received in payment for stock. There was no statutory requirement that payment should be in money or the money's worth; but without such an enactment, we think there is a rule of honesty and fair dealing, which should and will be recognized by the courts, which required it. * * * It must be true that where a number of persons have organized themselves as a body corporate and enter the business arena as such and invite and entertain dealings on the faith and credit of a fund, which, increased by gains or decreased by losses, will alone be available for the liquidation or payment of debts, they will be held to fairness and good faith in fulfilling the promise they made to contribute to the

fund which they hold out to the business world as the basis for credit. It is upon the faith of the amount of capital stock, either fully paid in and existing in the form of assets of the corporation, or to be paid in, that the creditor has dealt with and allowed the corporation to incur the liability, or has extended to it the credit, and it seems but just and right to require that payment for stock in other than money be required to be made in the money's worth in good faith and honesty of purpose, and when the circumstances and facts of a sale and purchase of stock disclose that there has been knowingly less than these, that it shall not be upheld against creditors, but the parties be compelled to right what is wrong, to pay and make good that which, through any device or scheme, has been withheld. * * * It may be conceded that when the power exists to accept property in payment for stock the corporation and subscriber may agree upon the value of property to be received in payment for stock in such manner as to be binding upon creditors, if there is no considerable advised and deliberate excessive overvaluations of the property, and that the stockholders will not be liable where the valuation was in good faith, although the property may subsequently prove to be of a less value than that placed upon it, or if there was nothing-more than an honest mistake of judgment; but 'a gross and obvious overvaluation of property would be strong evidence of fraud,' in an action by a creditor to enforce a personal liability. (*Coit v. North Carolina Gold Amalgamating Co.*, 119 U. S. 343, 7 Sup. Ct. Rep. 231.) Where property is conveyed to a corporation as payment of a subscription for stock, it is insufficient to satisfy the liability of subscribers to the creditors of the corporation, if there has been a fraudulent overvaluation of the property,—an overvaluation knowingly and advisedly made." In the opinion from which the above quotations have been made it was said that the decisions of the courts are apparently irreconcilable as to the liability of stockholders to creditors on

stock issued for property received at an overvaluation. That it may be clear that the position adopted by this court is sustained by a very strong array of adjudications we shall now proceed to demonstrate.

In *Du Pont v. Tilden*, 42 Fed. Rep. 87, the syllabus thus correctly reflects the scope of the opinion of Judge Blodgett: "Where a corporation which is authorized by its charter to buy land and pay for it in full-paid stock, issues such stock in payment for land to an amount greatly in excess of the value of the land, and the stock is sold to a purchaser for value, such purchaser is not liable to the creditors of the corporation on the ground that his stock is not fully paid for, where there was no fraud in the original transaction and the corporation has taken no steps to rescind it."

In the state of New York there was a statute which expressly authorized the trustees of manufacturing corporations, in good faith, to purchase property necessary to their business and issue stock to the amount of the value thereof in payment therefor and, in event of such purchase in compliance with the law, exempting such trustees from personal liability. This is the condition of the law in this state without statutory provisions, as has already been shown by the quotations from the case of *Gilkie & Anson Co. v. Dawson Town & Gas Co.*, *supra*.

In *Douglas v. Ireland*, 73 N. Y. 100, it was held that to charge the holder of stock of a manufacturing corporation, issued upon and for the purchase of property, individually for the debts of the company it is not enough to prove that the property was purchased at an overvaluation through a mere mistake or error of judgment on the part of the trustees, and that it must be shown that the purchase was in bad faith and to evade the statute.

In *Boynton v. Andrews*, 63 N. Y. 93, it was held in an action to enforce the individual liability of trustees of a manufacturing corporation because of the exchange of stock for property that the question is whether the purchase was in good faith or at a high valuation with

a fraudulent intent to evade the statute, and that an honest overvaluation of the property received will not of itself subject the owner of the stock to a personal liability. (See, also, *Schenck v. Andrews*, 57 N. Y. 133, to the same effect.)

In *Carr v. Le Fevre*, 27 Pa. St. 413, it was held that where a stockholder produced receipts for the amount of the consideration for land by him conveyed to the corporation for a legitimate purchase, it formed the basis for a credit on stock of the corporation purchased, and the sufficiency of the payment was not affected by after-discovered error in the judgment of the company as to the value of the land.

In *Young v. Erie Iron Co.*, 65 Mich. 111, Morse, J., said: "It must be considered as well settled that corporators cannot agree among themselves that property worth only $80,000 shall be treated as worth $422,000 and count at that sum as so much capital stock paid in, and then proceed to make their shares as fully paid up and non-assessable upon such false basis, as such action would be clearly a fraud upon the creditors. But it is equally well settled that such corporators are not responsible for an honest error of judgment, or a mistake in placing a valuation upon property appropriated or used as capital by a manufacturing or mining company. Nor can the fact that a jury or court finds property of the nature of this leasehold, necessarily fluctuating and speculative in value, worthless now, and of but little actual value at the time of its appropriation as capital, be controlling in deciding whether or not such appropriation was fraudulent as against the creditors of the corporation. Such finding will be presumptive evidence of fraud; but if it is shown that those forming the company honestly believed it to be worth the amount specified in the articles, and that their mistake was one of judgment only, their action cannot be considered fraudulent either in fact or in law. The law imposes no penalty of this kind upon a stockholder or trustee of a company for a mistake or erroneous

judgment in the honest and faithful discharge of his duties."

In *Phelan v. Hazard*, 5 Dil. [U. S. C. C.] 45, it was held that, unless prohibited by statute, an agreement between the incorporators of a company and the directors, by which the former convey to the company property needed for the purpose of its operations and receive payment therefor in full-paid shares of the stock of the company is, in the absence of fraud, binding upon the parties and such stock is full-paid stock.

In *American Tule & Iron Co. v. Hayes*, 30 Atl. Rep. [Pa.] 937, the facts, and the opinion of the supreme court of Pennsylvania thereon, are thus summarized in the syllabus: "(1.) The members of a firm engaged in operating gas wells formed a corporation under the natural gas act of 1885 with a capital stock of $500,000. They agreed with the corporation to transfer the firm's property to it in payment of the $500,000 of stock, and also that they should retain only $175,000 of such stock and turn into the company's treasury the remainder as a working capital. The contracts were performed in good faith. Held, that the stock was paid up, and that the subscribers were not liable to creditors for the amounts subscribed by them. (2.) The facts that the property transferred to the company afterwards proved to be worth much less than $175,000, the amount actually paid for it, and that the parties adopted a clumsy and suspicious method of effecting the transfer, did not render the subscribers liable as for unpaid stock."

In *Bickley v. Schlag*, 20 Atl. Rep. [N. J.] 250, it was held by the court of error and appeals of New Jersey that when a corporation, by virtue of its charter, pays for property purchased with its capital stock, such sale cannot be set aside in the absence of fraud, on the ground that the value of such property was not equal to the value of the stock.

In *Clow v. Brown*, 31 N. E. Rep. [Ind.] 361, it was held by the supreme court of Indiana that where it appears

that the full amount of the capital stock of a corporation was paid to the satisfaction of the contracting parties, such payment can be impeached by a creditor only on the ground of fraud which must be charged in the pleadings.

In *Kelley v. Fletcher*, 28 S. W. Rep. [Tenn.] 1099, the views of the supreme court of Tennessee are thus condensed in the syllabus: "A bill by a corporate creditor to enforce liability on the part of the stockholders for the difference between the amounts of their subscriptions and the value of the property conveyed by them to the corporation in payment of the subscriptions must allege an intentional or fraudulent overvaluation of such property."

The necessity of averment of a fraudulent intent, in conjunction with an overvaluation of property exchanged for the capital stock of a corporation, has been recognized and enforced in *Troup v. Horbach*, 53 Neb. 795, and our conviction with reference to the correctness of our views therein announced is strengthened by a reexamination of the question, rendered necessary in this case. It is true, generally, that the securing of an advantage by a stockholder to himself by reason of his relations with the corporation with which he is connected subjects his conduct to a species of criticism from which he would be free but for his confidential relation; but, even in the face of the presumptions against a stockholder, he may show that the transaction to which he was a party was *bona fide*. (*Gorder v. Plattsmouth Canning Co.*, 36 Neb. 548.) The burden of proof is, doubtless, more strongly devolved upon a stockholder to show good faith with the corporation than it would be if he were a stranger. So it is in transactions between relatives or others sustaining confidential relations in matters involving the rights of creditors, and yet it often happens that such transactions are found valid and the rights of the parties enforceable. The relation of a stockholder to a corporation is no exception to the class of cases involving confidential relations or such that a fraud might

be more likely to take place than between strangers. In the case at bar the district court, upon consideration of all the evidence, found that while the property exchanged for capital stock was exchanged at an excessive valuation, yet that this was done in good faith and with no intent to defraud the corporation or its creditors. There was therefore by the last finding eliminated a very essential ingredient to the establishment of a cause of action for a money judgment against the stockholders, and the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.