O. O. THOMAS, APPELLEE, V. WILL J. SCOUTT ET AL.,
APPELLANTS.

FILED JULY 26, 1927. No. 24069.

1. **Corporations:** CAPITAL STOCK: LIABILITY FOR SUBSCRIPTIONS. Liability for unpaid subscriptions for capital stock of a corporation is based on the subscriber's contract, of which the provision of the Constitution relating to that subject is an integral part.

2. ———: ———: ———. Where an original subscriber for shares of capital stock in a corporation pays therefor in full, neither he nor subsequent holders of the same shares through mesne transfers are liable to subsequent judgment creditors of the corporation for unpaid subscriptions.

3. ———: ———: SUBSCRIPTIONS: SUIT TO ENFORCE: BURDEN OF PROOF. In a suit by a judgment creditor of a corporation to enforce the liabilty of stockholders on account of unpaid subscriptions, the burden is on plaintiff to prove by a preponderance of the evidence that the whole or some part of the amount subscribed remains unpaid.

4. ———: ———: ———: ———: ———. In a suit by a judgment creditor of a corporation to recover from stockholders the amounts due from them for unpaid subscriptions on the ground that property fraudulently overvalued was exchanged for capital stock, proof of excessive values at the time of the exchange is essential to a recovery.

5. ———: ———: PAYMENT IN PROPERTY. The constitutional provisions relating to liability for unpaid subscriptions to capital stock of a corporation do not forbid payment in property instead of money.

6. ———: ———: ———. In the exercise of good faith and in the absence of any intention to defraud a corporation or its creditors, property needed for corporate purposes may be sold and received for capital stock.

7. **Constitutional Law:** JUDICIAL INTERPRETATIONS. The supreme court's interpretation of a constitutional provision is a part of the Constitution itself and is binding on suitors seeking the enforcement of liabilities created by that instrument.

8. **Corporations:** CREDIT. Corporate records showing payment for capital stock in property are available to a prospective creditor and he may make disclosure a condition of extending credit to the corporation.

9. **Evidence:** VALUE OF PERSONALTY. As a general rule the owner

Thomas v. Scoutt.

of personal property is a competent witness to testify to its value.

10. Corporations:. FRAUD: SUFFICIENCY OF EVIDENCE. Evidence discussed in the opinion *held* insufficient to show actionable fraud or overvaluation in the exchange of property for capital stock of a corporation.

11. Appeal: AMENDMENT OF PLEADING. In the supreme court a motion by plaintiff to amend his petition to conform to the proofs is unavailing, where the evidence is insufficient to support a judgment in his favor.

12. Corporations: STOCKHOLDERS: LIABILITY: NOTICE OF INDEBTEDNESS. The statutory liability of stockholders for failure of the corporation to publish annual notice of its debts is penal in its nature and should not be enlarged by construction or enforced by presumption of facts not proved.

13. ——: NOTICE OF INDEBTEDNESS: PRESUMPTION. It will be presumed that officers of a corporation performed their statutory duty to publish annual notice of corporate debts in absence of evidence to the contrary.

14. ——: ——: FAILURE TO PUBLISH: PROOF. In making a *prima facie* case against stockholders for failure of the corporation to publish annual notice of its debts, it is incumbent on a judgment creditor to prove by a preponderance of evidence the date on which the corporate debt owing to him was created and default in the publication of notice at that time.

15. ——: ——: ——: INSUFFICIENCY OF EVIDENCE. Evidence discussed in the opinion *held* insufficient to show statutory liability of stockholders for failure to publish annual notice of corporate debts.

APPEAL from the district court for Lancaster county: JEFFERSON H. BROADY, JUDGE. *Reversed and dismissed.*

*Peterson & Devoe* and *Brown & Dibble,* for appellants.

*Sterling F. Mutts* and *Edward C. Fisher, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD and EBERLY, JJ.

ROSE J.

This is a suit in equity to recover from the Western Publishing & Engraving Company, hereinafter called the "corporation," and its stockholders, the amount due on a judgment against it for $3,018.63. O. O. Thomas is plaintiff.

In a former action at law in the district court for Lancaster county, he recovered a judgment against the corporation November 28, 1922, on a promissory note for $2,600, dated March 31, 1921. The note was executed by the corporation, was payable to L. A. Berge, was transferred by him to the Farmers & Merchants Bank of Walton and by the latter to plaintiff. It was for the unpaid debt evidenced by this note that the judgment for $3,018.63 was entered in the former action at law. Execution thereon was issued and returned unsatisfied. The defendants in the present suit in equity are the corporation and its stockholders. The grounds of equitable relief pleaded by plaintiff are failure of the stockholders to pay their subscriptions for capital stock and non-compliance with the statute requiring published notice of corporate debts. The facts pleaded by plaintiff to charge the stockholders with liability for the debt of the corporation were put in issue by answers to the petition in equity. Upon a trial of the cause the district court in determining the liability of stockholders for unpaid subscriptions found the issues in favor of plaintiff and rendered a decree in his favor for $3,194.40, the amount of his former judgment against the corporation with interest, less a partial payment. The cause was presented to the supreme court by an appeal of stockholders.

A motion by appellee to dismiss the appeal for want of necessary parties in the appellate court was overruled and will not be reconsidered.

The first question for trial *de novo* is: Are the stockholders or any of them liable for unpaid subscriptions to the capital stock of the corporation? Liability for an unpaid subscription is based on the subscriber's contract, of which the following constitutional provision is by construction an integral part:

"In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscrip-

tion, and the liability for the unpaid subscription shall follow the stock." Const., art. XII, sec. 4.

The corporation was in existence long before the debt in controversy was incurred. The publication of a history of Nebraska was an undertaking performed at least in part by the corporation. Daniel Webster Clendenan formerly owned the stock and in a corporate capacity published historical works, using data and writings of his own and also of others. In the midst of this work he died. At the time of his death his corporate holdings were represented by the capital stock of the Western Publishing & Engraving Company in the form of shares aggregating $20,400. These passed to his wife, Ida N. Clendenan, who later became the wife of James H. Scoutt. Afterward, January 9, 1918, amended articles of incorporation were regularly adopted. Under the new organization the capital stock was increased to $100,000. For this entire issue Ida N. Scoutt subscribed, exchanging her old stock, $20,400, for the same amount of the new, both at par, and for the other shares aggregating $79,600, transferring for the latter to the corporation in lieu of money historical manuscripts and other property desired by the directors and executive officers for the purposes of the publishing enterprise then in contemplation. In connnection with the transactions indicated she reassigned to the corporation gratuitously, as treasury stock, new shares amounting to $15,000 for the purpose of creating, when resold, a working fund for the transaction of corporate business. Within the meaning of the constitutional provision relating to individual liability for unpaid subscriptions she was the "original" subscriber for the entire new issue of stock. She was the principal defendant herein. The other stockholders, sued as defendants, acquired their stock by mesne transfers from Ida N. Scoutt, some through sheriff's sales of her shares and others by purchase. It follows, therefore, if, as the original suscriber, she paid for all the new stock, within the meaning of the constitutional provision, neither she nor her mesne transferees are liable for unpaid subscriptions.

In the situation outlined plaintiff takes the position that the property exchanged for the corporate stock was overvalued to such an extent as to show bad faith and reckless disregard of values amounting to fraud upon creditors. Plaintiff did not plead fraud, but asserted by motion in the supreme court the right to amend his pleadings to conform to proofs that the property exchanged for the stock was fraudulently overvalued. The right of amendment in the appellate court does not exist unless fraud was shown by a preponderance of the evidence. The motion to amend, like the resort of plaintiff to unpaid subscriptions for payment of his judgment, required evidence of the fraudulent overvaluation of the property exchanged for stock. On both issues the burden of proof was on plaintiff. The decision depends on what is disclosed by the evidence.

The transactions under consideration import on their face formality, honesty and fair dealing on the part of the executive officers of the corporation and the stockholders. The exchange prices were fixed at a time when inflation exaggerated values. Fraud in stipulated prices is not necessarily shown by the economic mirage thus created nor by subsequent events. What was originally in the minds of the contracting parties should not be determined by estimates of values and conditions at the time of the trial years later after a destructive fall in prices followed deflation. The test of overvaluation and fraud in the present instance properly relates to conditions in 1918, when the new stock was issued. The property exchanged for stock in lieu of money consisted of data, manuscripts and other materials essential to the identical purposes for which the publishing enterprise was reincorporated.

The Constitution does not require payment for stock in money as a condition of immunity from liability for unpaid subscriptions. In the exercise of good faith and in the absence of any intention to defraud the corporation or its creditors, property needed for corporate purposes may be sold and received for shares of capital stock. This is the rule adopted in Nebraska in construing and applying the

constitutional provision creating liability for unpaid sub-
scriptions. *Troup v. Horbach,* 53 Neb. 795; *Penfield v. Daw-
son Town & Gas Co.,* 57 Neb. 231. This view is sustained
by authority, though some courts take the view that pay-
ments in property for shares of capital stock require val-
ues equivalent to money. The interpretation of the supreme
court is part of the Constitution itself and is binding on
litigants seeking the enforcement of liabilities created by
that instrument. Corporate records showing payment for
stock in property instead of money are available to a pro-
spective creditor and he may make disclosure a condition
of extending credit to the corporation.

There is no proof that the old issue for $20,400,
when exchanged for new stock and surrendered to the
corporation, was not worth face value. Most of the shares
comprising the item of $15,000 returned as treasury stock
were resold at par. Ida N. Scoutt said she had an experi-
ence of 17 years in the identical work for which her prop-
erty was sold to and accepted by the corporation. As owner
of the property exchanged for stock to the extent of $79,-
600, she testified to items and values as follows: Contracts
for the purchase of books, $33,000; capital stock of the old
corporation, $24,400; plates for historical publications,
$35,000; manuscripts, $25,000. She testified also that all
items of property sold by her to the corporation exceeded
in value the purchase price of the stock—$79,600. There
was testimony of a similar import by another witness. Evi-
dence of this character was not disproved. There is, how-
ever, testimony of an appraiser formerly appointed by the
county court of Lancaster county that the interest of Dan-
iel Webster Clendenan in the old stock owned by him at the
time of his death had no value. This appraisement related
alone to decedent's interest which then, in the opinion of
the appraisers, amounted to nothing, owing to existing in-
cumbrances for debts. It does not contradict or weaken
testimony refuting the charge of overvaluation.

When the times, circumstances and conditions are con-
sidered, plaintiff did not prove overvaluation. In logic and

reason inferences of excessive prices amounting to fraud
or bad faith cannot be drawn from the evidential facts.
After Ida N. Scoutt offered her property to the corporation
for $79,600 in stock, the board of directors appointed a
committee of three to investigate and report values. The
resulting report fixed at $79,600 the value of the "man-
uscripts and rights" offered for sale and recommended the
acceptance of the offer. The transactions implied mutual
faith in the success of the corporation with stipulated val-
ues in mind. Realization of the sale price of the property
in money depended on corporate profits. There was evi-
dence of subsequent rascality in corporate management,
but dishonesty or fraud or bad faith was not traced to any
stockholder within the jurisdiction of the district court
in the present suit. The corporation went to the wall, but,
in the light of subsequent events, the unwise sale and ac-
ceptance of property for stock, poor judgment and mis-
management did not prove overvaluation or fraud or bad
faith in the initial transactions. Amazing profits may re-
sult from the exchange of property for stock. Corporate
failure may follow cash payments for stock subscriptions.
On this phase of the case the conclusion is that plaintiff
failed to prove overvaluation or fraud or bad faith in the
exchange of property for capital stock. As already stated
Ida N. Scoutt was the original subscriber for all the stock
of the new corporation. Evidence that she did not pay
for it within the meaning of the constitutional provision in-
voked by plaintiff was not adduced. It follows that he was
not entitled to amend in the supreme court his petition to
charge fraud. It is equally clear that he was not entitled
to recover judgment against any stockholder for an unpaid
subscription.

Was the corporation in default of the annual notice of
its debts when the debt to plaintiff was created? This is
the remaining issue for trial *de novo*. The statute provides:

"Every corporation hereafter created shall give notice
annually in some newspaper * * * of the amount of all
existing debts of the corporation, * * * and if any corpo-

Thomas v. Scoutt.

ration shall fail to do so, after the assets of the corporation are first exhausted, then all the stockholders of the corporation, shall be jointly and severally liable for all debts of the corporation then existing, and for all that shall be contracted before such notice is given, to the extent of the unpaid subscription of any stockholder to the capital stock of such corporation, and in addition thereto the amount of capital stock owned by such individuals." Comp. St. 1922, sec. 470.

Failure to publish the annual notice thus required creates a liability in the form of a penalty. *Singhaus v. Piper*, 103 Neb. 493; *Bourne v. Baer*, 107 Neb. 255. There is a presumption that the proper officers of the corporation performed their duty and published the required notice, unless the contrary is shown by evidence. There is no presumption of neglect in that particular. Plaintiff pleaded failure to comply with the statutory provision. The burden was on him to prove what he charged. In making a *prima facie* case he was required to prove the date on which the corporation incurred the debt evidenced by the unpaid judgment in his favor and to prove also default in the publication of notice at that time. Did he prove when the debt was incurred? The date of the note on which he recovered his judgment for $3,018.63 was March 31, 1921, but the debt was previously created. The evidence so shows. L. A. Berge was the payee named in the note. It was executed by the corporation and delivered to him pursuant to a decree rendered by the district court for Lancaster county in a prior suit involving other notes and debts owing to him by the corporation. In settlement of the controversies in that litigation the note of March 31, 1921, was given under an order of court. Plaintiff asserts that the decree was rendered March 3, 1921, and argues that the debt was then created. The position is untenable. The decree directing the corporation to give the note is in the record and shows on its face a judicial purpose to make it represent a previous indebtedness. The date on which that indebtedness was created is not shown by any evidence.

Plaintiff concedes that notice was given in April, 1920, but he did not prove that the debt due him from the corporation was not incurred during the period covered by that publication, nor that the corporation was in default when the debt was created. He did not, therefore, make a *prima facie* case against any stockholder for the statutory penalty.

The entire cause was presented to the supreme court for trial *de novo* without regard to the findings of the district court. Though the record fails to show that Ida N. Scoutt appealed from the judgment, her rights and immunity were disclosed by other stockholders who did appeal. The judgment against her for unpaid subscriptions is outside of the pleadings and proofs. It would be inequitable under the peculiar circumstances disclosed to allow it to stand, while other stockholders joined with her in the litigation and judgment escaped the liability for which all were sued.

The appeal was twice presented to a division of the supreme court commission with the following results: June 2, 1926, the judgment of the district court was reversed in part and affirmed in part; December 21, 1926, the judgment of the district court was affirmed. Both former decisions on appeal are set aside. The judgment of the district court is reversed in its entirety and the action dismissed at the costs of plaintiff.

REVERSED AND DISMISSED.